## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| SARAH HOHENBERG and JOSEPH HANSON,<br><br>Plaintiffs,<br><br>v.<br><br>SHELBY COUNTY, TENNESSEE; DIVISION 14 OF THE SHELBY COUNTY, TENNESSEE, GENERAL SESSIONS COURT, CRIMINAL DIVISION; and CITY OF MEMPHIS, TENNESSEE;<br><br>Defendants. | Civil Case No. 2:20-cv-02432<br><br><br>**FIRST AMENDED CIVIL RIGHTS COMPLAINT** |

### I.    INTRODUCTION

1.    When a court proceeding may result in the loss of a person's home, the U.S. Constitution demands a fair process with rigorous safeguards against erroneous deprivation. The process provided to Sarah Hohenberg ("Ms. Hohenberg") and Joseph Hanson ("Mr. Hanson," and together, the "Plaintiffs") by Division 14 of the Shelby County, Tennessee, General Sessions Court, Criminal Division, typically referred to as the "Environmental Court," lacked so many basic procedural safeguards that its proceedings bore little resemblance to the functions of an actual court. In the end, appearing before the Environmental Court cost them their homes, their possessions, and their freedom.

2.    The Environmental Court does not swear witnesses in nor do witnesses attest that their testimony will be truthful. It admits hearsay testimony. It relies on evidence that is not authenticated. It does not require witnesses to demonstrate the basis of their testimony. People state their evidence from the courtroom audience. The court does not follow the Tennessee Rules

of Evidence or the Tennessee Rules of Civil Procedure.

3.      The Environmental Court's proceedings are not transcribed or recorded. It does not retain evidence. Its court files are bare and often impossible to obtain, suggesting that they either do not exist, or have been misplaced or destroyed.

4.      Moreover, these manifest defects cannot be fixed on appeal. Appeals from the Environmental Court go directly to the Tennessee Court of Appeals, which does not, and cannot, conduct a trial de novo to lessen the possibility of erroneous deprivation. Instead, the appellate court is expected to review the correctness of the Environmental Court's decision without a record, transcripts, or often even the Environmental Court's orders. In other words, the right to appeal from decisions from the Environmental Court is illusory.

5.      The result is a court that makes decisions about one of the most precious possessions a person can have—their home—with few meaningful procedural protections for those appearing in in the court. Not surprisingly, these procedural deficiencies can, and do, result in significant harm to those appearing before the court. For Ms. Hohenberg, being in the Environmental Court left her bankrupt, homeless, stripped of her possessions, and a fugitive from the law. Mr. Hanson was jailed pursuant to Environment Court orders, and also lost his possessions and was left homeless and living on the streets during a pandemic.

6.      For these reasons, the Plaintiffs bring this civil rights law suit to (i) vindicate their fundamental right to due process; (ii) receive a declaration from this Court that the defendants' policies, practices, and customs were unlawful; and (iii) obtain monetary relief for the actual and special damages they suffered at the defendants' hands.

## II.      JURISDCTION AND VENUE

7.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 *et*

*seq.*, and the Fourteenth Amendment to the U.S. Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8.      Venue is proper in this Court under 28 U.S.C. § 1391.

### III.      PARTIES

#### A.      Plaintiffs

9.      Plaintiff Sarah Hohenberg is a sixty-nine-year-old, unmarried, disabled woman. She is currently a resident of the state of Mississippi. She owned the houses and curtilage at 1905 Overton Park, Memphis, Tennessee (the "Hohenberg Property"), which was the subject of the proceedings in the Environmental Court. On June 24, 2019, the Environmental Court issued an order dismissing the proceedings against Ms. Hohenberg and recalling the warrant the court had issued for Ms. Hohenberg's arrest.

10.      Plaintiff Joseph Hanson is a fifty-one year-old, unmarried man. He is currently homeless. He lived at the house at 2331 Eveningview Drive, Memphis, Tennessee, (the "Hanson Property") which was the subject of the proceedings in the Environmental Court. In or around December 2019, the city of Memphis bulldozed his home and destroyed his possessions in the house, including his financial papers, computer, and records. In or around December 2019, the Environmental Court issued an order dismissing the case against Mr. Hanson.

#### B.      Defendants

11.      **Shelby County**: Defendant Shelby County is a Tennessee public municipal corporation vested with "any and all powers which counties are, or may hereafter be, authorized or required to exercise under the Constitution and general laws of the State of Tennessee." Shelby Cty. Charter, art. I, § 1.03.

12.      Defendant Shelby County vests its judicial powers "in the existing courts of Shelby

County or any other courts established by law," including "such additional divisions of general sessions court which it deems necessary." Shelby Cty. Charter, art. IV, § 4.01.

13.    Defendant Shelby County created the Environmental Court by ordinance on June 24, 1991. *See* Resolution No. 62, 6-24-1991; *see also* Shelby County, Tennessee, Code of Ordinances § 10-605 ("The fourteenth division to the general sessions court of the county is hereby created. . . . The court shall hereinafter be referred to as the county's environmental court.").

14.    Defendant Shelby County also created the office of general sessions judge for the Environmental Court. Shelby County, Tennessee, Code of Ordinances § 10-606.

15.    The ordinances creating the court and its judge, passed by the Shelby County Board of Commissioners, qualify as a "policies or customs" attributable to Defendant Shelby County. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *see also Owen v. City of Independence*, 445 U.S. 622 (1980) (holding municipality liable for action taken pursuant to City Council vote).

16.    Defendant Shelby County is legally obligated to fund the Environmental Court. *See* 1982 Tenn. Pub. Acts 3; Shelby County, Tenn., Code of Ordinances § 10-605 ("The fourteenth division shall hold court in the county seat in accordance with state law and the county shall defray the expenses thereof from the county general fund.").

17.    Upon information and belief, Defendant Shelby County continues to fund the Environmental Court's operations.

18.    By creating and continuing to fund the Environmental Court and its judge, Defendant Shelby County violated the Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution.

19.    **<u>The Environmental Court</u>**: Defendant Environmental Court is a division of the

4

general sessions courts of Shelby County. *See* Shelby County, Tennessee, Code of Ordinances § 10-605.

20.     Shelby County created the Environmental Court by local ordinance.

21.     The Environmental Court is vested with "the same jurisdiction and powers as are now exercised by the general sessions courts of the county." *Id.*

22.     The Environmental Court also possesses "exclusive jurisdiction to hear and decide cases involving alleged violations of county ordinances, including alleged violations of environmental ordinances." *Id.*

23.     By law, Defendant Shelby County funds the operations of the Environmental Court. *Id.*

24.     **The city of Memphis**: Defendant city of Memphis is a Tennessee public municipal corporation.

25.     The city of Memphis brings code enforcement cases, including Mr. Hanson's, in the Environmental Court.

26.     In 2009, then Mayor A.C. Wharton announced on the campaign trail, "If you own property in the city of Memphis, you will maintain that property or you will end up in court." Steven F. Barlow, et al., *Ten Years of Fighting Blighted Property in Memphis: How Innovative Litigation Inspired Systems Change and a Local Culture of Collaboration to Resolve Vacant and Abandoned Properties*, 25 J. Affordable Housing & Community Dev. L. 347, 360 (2017).

27.     Within 100 days of launching a campaign featuring the Environmental Court in 2010, the city of Memphis filed 138 NPA lawsuits in Environmental Court, with plans to file 500 cases in five years. *Id.*

28.     The city of Memphis convenes monthly meetings of the "E-Team," described as

the "intergovernmental inter-agency tactical trouble shooting team" for addressing problem properties. *Id.* at 383.

29.    These monthly meetings facilitate face-to-face communication between Environmental Court prosecutors and "police, code inspection, . . . neighborhood organizing, litter patrol, dumping regulation, the health department, environment and conservation, community development and housing, and even finance and tax collections." *Id.*

30.    The meetings are facilitated by—and attended by—Memphis Mayor Jim Strickland.

31.    In 2019, the Memphis City Council approved $1.4 million in its 2019 budget to fund operations of this "18-member environmental enforcement team" that was designed to create "more work for the Shelby County Environmental Court." https://www.commercialappeal.com/story/news/local/2018/06/13/memphis-tn-homes-development-blight-ordinance-codes/691012002/.

32.    Given these regular meetings and constant collaboration, Memphis policymakers knew or had reason to know that the court lacked constitutionally sufficient due process protections for property owners and those living in occupied homes.

33.    The city of Memphis nonetheless chose to continue collaborating and funding ongoing code-enforcement operations designed to send property owners to the Environmental Court for litigation.

34.    By encouraging, developing, promoting, and crafting the Environmental Court code-enforcement model, Defendant city of Memphis and its codefendants pioneered and participated in a concerted scheme that deprived property owners and those living in occupied homes of their homes without due process of law.

6

## IV.   FACTUAL ALLEGATIONS

**A.   Tennessee's Neighborhood Preservation Act**

35.     The Environmental Court hears cases brought under Tennessee's Neighborhood Preservation Act, (NPA or the "Act"), which the Tennessee Legislature first passed in 2004.

36.     The Act permits private entities to sue property owners to enforce municipal code provisions.

37.     Until 2016, the NPA limited actions to abandoned and blighted properties, "structure[s] . . . not occupied by any owner, tenants or residents." Tenn. Code § 13-6-102(2) (2014).

38.     In 2016, the Tennessee Legislature amended the NPA to allow for a public nuisance cause of action against the owners of occupied properties. 2016 Tenn. Laws Pub. Ch. 727 (H.B. 1932).

39.     The Act creates two different causes of action. First, it permits "[a]n owner of residential property affected by residential rental property or residential property not maintained to community standards" to bring an action for damages against the owner of the property allegedly failing to meet such standards. Tenn. Code Ann. § 13-6-104(a).

40.     The second cause of action permits an "acceptable petitioner" to bring a suit *in rem* against a subject parcel to obtain an order that the parcel is a public nuisance and for abatement of that nuisance. Tenn. Code Ann. § 13-6-106(a).

41.     "Acceptable petitioner" means "(A) Any nonprofit corporation; (B) The municipal corporation within which the subject parcel is located; (C) The owner or legal occupant of a parcel of real property that is adversely impacted by the condition of the subject parcel; or (D) Any interested person." Tenn. Code Ann. § 13-6-102(2). An "interested person" is an owner, named

trustee, lien holder, the possessor of a deed of trust, the beneficiary of an easement appurtenant, the holder of a restrictive covenant, or a person who possesses an interest of record in the property. Tenn. Code Ann. § 13-6-102(7).

42.     The petitioner must include with the petition a draft order of compliance requesting that the court appoint a receiver should the owner of the property not comply with that order. Tenn. Code Ann. § 13-6-106(a), (b).

43.     The petitioner must attach to the petition a certificate of public nuisance issued by the relevant municipality. If the petitioner does not have such a certificate, the municipality must inspect the property within 30 days. Tenn. Code Ann. § 13-6-106(a).

44.     The filing creates a super lien on the property for the receiver. The petition bars the owner's transfer of title in property. Tenn. Code Ann. § 13-6-106(c)(1), (2).

45.     The filing also authorizes the government to enter the property—at any time—to board, secure, or maintain the property at the expense of the owner. Tenn. Code Ann. § 13-6-106(c)(3).

46.     If the court finds the property to be a public nuisance, the owner must then produce a plan to abate the nuisance. The plan is subject to court approval. Tenn. Code Ann. § 13-6-106(e). The plan must contain a budget, a timeline, the cost of potential demolition, and state whether the owner has sufficient assets to abate the nuisance or, if not, state whether any financing is available to repair the property. Tenn. Code Ann. § 13-6-106(h)(1).

47.     The court may also permit an "interested person" to submit an abatement plan and abate the nuisance. Tenn. Code Ann. § 13-6-106(f).

48.     If this does not result in the abatement of the nuisance, the court may appoint a receiver to take possession and control of the property, submit an abatement plan, and abate the

nuisance. Tenn. Code Ann. § 13-6-106(g).

49.     When the receiver completes the abatement plan, the court then sets a lien amount for the receiver, which the owner may satisfy. If the owner satisfies the lien, the receivership ends. Tenn. Code Ann. § 13-6-106(i)(2).

50.     If the owner does not satisfy the lien, the receiver must auction the property, with the minimum bid being the full amount of the receiver's lien. Tenn. Code Ann. § 13-6-106(j)(2).

51.     A "local land bank" may inform the receiver prior to the auction that it wants to purchase the property and the land bank may then do so for the minimum bid. Tenn. Code Ann. § 13-6-106(j)(3).

52.     Any money paid by the purchaser (either at the auction or in a purchase by the local land bank) is distributed first to the receiver to satisfy the lien, then to satisfy any tax on the property, and then to the owner (if there is anything left). Tenn. Code Ann. § 13-6-106(j)(5).

53.     Under the NPA, the owner of the property possesses only three defenses to suits brought pursuant to the statute: (i) the nuisance is the result of an act of nature, (ii) the owner of the property suffers from a serious illness, or (iii) some legal barrier (such as bankruptcy, foreclosure, divorce, etc.) exists to prevent abatement. Tenn. Code Ann. § 13-6-104(a).

**B.     The Environmental Court**

54.     In Memphis, the Environmental Court has the sole authority to adjudicate cases arising under the NPA.

55.     The Environmental Court is a general sessions court. S.B. 1046, 97th Gen. Assemb., 2d Reg. Sess. (Tenn. 1991).

56.     The Tennessee Rules of Civil Procedure do not apply to general sessions courts.

57.     Instead, the Environmental Court's proceedings are governed by the Shelby County

General Sessions Rules—Criminal Division Rules.

58.     The Shelby County General Sessions Rules—Criminal Division Rules are six pages long and largely concerned with courtroom decorum.

59.     The Tennessee Rules of Evidence fully apply to general sessions courts and therefore are supposed to, but do not, apply in the Environmental Court.

60.     Under Tennessee law, general sessions courts, including the Environmental Court, are not courts of record, meaning that its proceedings are not recorded or transcribed, and no record is created.

61.     Rule 24 of the Tennessee Rules of Appellate Procedure requires a record for any appeal. However, the Tennessee Court of Appeals has held that, in contrast to other general sessions courts, appeals from the Environmental Court go to the Tennessee Court of Appeals and are not heard de novo in the Tennessee Circuit Court. *See State ex rel. Gibbons v. Club Universe*, No. W2004-02761-COA-R3-CV, 2005 Tenn. App. LEXIS 439, 2005 WL 1750358 (Tenn. Ct. App. July 26, 2005).

62.     General sessions courts do not have jurisdiction to consider constitutional claims or defenses. Tenn. Code Ann. § 16-15-501.

**C.     The Proceedings Involving Ms. Hohenberg**

63.     Ms. Hohenberg purchased the Property in 1994.

64.     During the time she owned the Property, she owned it outright with no mortgage.

65.     In 2009, she lived in the main house on the Property with her adult daughter.

66.     That year, a severe storm struck Memphis. It uprooted two trees on the Property, both of which fell onto the back of the main house on the Property.

67.     The tree caved in the back of the house and made it uninhabitable.

68.     Ms. Hohenberg's insurance did not cover the repairs as anticipated, and she was forced to sue her insurance company to require them to repair her home.

69.     While the house was uninhabitable, she and her daughter lived in a two-room guest house on the Property.

70.     On or around December 21, 2011, while her suit against the insurance company was pending, the Evergreen Historic District Association filed suit against Ms. Hohenberg pursuant to the NPA, even though the NPA did not, on its face, apply to owner-occupied homes at the time. Civil Warrant No. 11641386-01 (the "Evergreen Suit").

71.     When the Evergreen Suit was filed, Ms. Hohenberg was still living in the two-room guest house attached to her home.

72.     Ms. Hohenberg suffers from several severe physical ailments and for most of the time the Environmental Court proceedings were occurring was unable to walk without assistance.

73.     In 2013, Ms. Hohenberg's neighbors Frederick and Mercedita Neal sued her in the Environmental Court pursuant to the NPA, even though the NPA did not, on its face, apply to owner-occupied homes at the time. The Neals brought the suit pursuant to Tenn. Code Ann. § 13-6-104 and sought money damages of $30,000 and attorneys' fees and costs.

74.     Although the Neals filed suit under Tenn. Code Ann. § 13-6-104, the money damages portion of the Act, much of their case proceeded as if the case were brought under Tenn. Code Ann. § 13-6-106, which provides for a civil action to enforce compliance against a property owner.

75.     Ms. Hohenberg filed a Chapter 7 bankruptcy petition on August 2, 2018, while the Environmental Court proceedings were still ongoing.

76.     On October 9, 2013, the Environmental Court declared Ms. Hohenberg's home to

be a public nuisance and required her to submit a development plan detailing how she planned to fix it. Ms. Hohenberg subsequently submitted a plan.

77.     On December 20, 2013, the Environmental Court declared that it would appoint a receiver in order to assume control of the property and hasten the speed of repairs.

78.     On February 27, 2014, the Environmental Court appointed Neighborhood Preservation, Inc. (NPI) as receiver, empowering them to make repairs to the home in exchange for a lien on the property.

79.     On November 7, 2015, NPI presented Ms. Hohenberg with a bill for approximately $172,000, representing the cost of the repairs made to her home. Although Ms. Hohenberg made several small payments, she could not afford to pay the entire repair bill.

80.     NPI subsequently filed a motion with the Environmental Court seeking to enforce its lien on Ms. Hohenberg's home by selling it at auction. From December 2016 to November 2017, the Environmental Court issued and recalled numerous orders that Ms. Hohenberg's home be sold at auction.

81.     On November 3, 2017, Ms. Hohenberg's home was sold at auction pursuant to Environmental Court order.

82.     On November 20, 2017, Ms. Hohenberg timely filed an appeal of the Environmental Court's auction order with the Tennessee Court of Appeals. Because the Environmental Court could not adjudicate constitutional claims in the first instance and because the Tennessee Court of Appeals may only exercise appellate review, Ms. Hohenberg's grounds for appeal were limited.

83.     Pending appeal, Ms. Hohenberg refused to vacate the Property or sign a quit-claim deed.

84.     In December 2017, NPI initiated proceedings in the Environmental Court designed to require Ms. Hohenberg to comply with a sale of the Property.

85.     At some point during the pendency of the Evergreen Suit, the State of Tennessee also filed a suit against Ms. Hohenberg in the Environmental Court, Civil Warrant No. 13645152-01 (the "Tennessee Suit").

86.     Ms. Hohenberg retained counsel to defend her in both the Evergreen Suit and the Tennessee Suit. She estimates that she spent at least $100,000 in attorneys' fees.

87.     Ms. Hohenberg's suit against her insurance company was ultimately unsuccessful.

88.     Although the Tennessee Rules of Evidence fully apply to general sessions courts, the Environmental Court did not abide by them during its proceedings regarding Ms. Hohenberg.

89.     The Environmental Court heard hearsay testimony during its proceedings regarding Ms. Hohenberg.

90.     The Environmental Court heard witnesses who did not swear or attest to the truthfulness of their testimony in its proceedings regarding Ms. Hohenberg.

91.     The plaintiffs in Ms. Hohenberg's cases did not lay the foundation for evidence to be admitted or considered in Ms. Hohenberg's cases.

92.     The plaintiffs in Ms. Hohenberg's cases did not authenticate the evidence in Ms. Hohenberg's cases.

93.     Because it is a general sessions court, the Environmental Court's proceedings regarding Ms. Hohenberg were not recorded or transcribed, and the Environmental Court did not create an adequate (or, so far as Ms. Hohenberg is aware, any) record in Ms. Hohenberg's cases.

94.     To the extent that any records of Ms. Hohenberg's proceedings in the Environmental Court exist, Ms. Hohenberg's friends, agents, and counsel have been unable to

access them, despite repeated attempts to do so.

95.     To the extent that Ms. Hohenberg could seek appellate review of the Environmental Court's decisions and orders, the process afforded appellants in cases arising from the Environmental Court is woefully deficient in its ability to correct legal and factual errors committed by the Environmental Court.

96.     This is because the Tennessee Court of Appeals is expected to consider appeals from the Environmental Court without having access to any evidence, testimony, transcripts, recordings, or even orders concerning what transpired in the Environmental Court.

97.     The combination of not being able to raise constitutional issues in the Environmental Court and the lack of a meaningful appellate review meant that the constitutional deficiencies in the Environmental Court's proceedings could not be raised before the Environmental Court and could not be effectively reviewed on appeal.

98.     Defendant Shelby County had a policy and practice of funding, and failing to oversee and restrict, the Environmental Court's violation of Ms. Hohenberg's due process rights by, among other things, failing to require the Environmental Court to follow the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure, or similar rules and procedures; failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; failing to require the Environmental Court to keep a record and transcript of its proceedings; and routinely losing, destroying, or otherwise making unavailable Environmental Court case files or jackets.

99.     Ms. Hohenberg remains unable to obtain copies of the files of her cases in the Environmental Court.

100.    Ms. Hohenberg was subject to the proceedings in the Environmental Court for six

years.

101.    In large part because of money she owes to her attorneys for representing her in the Environmental Court, and other costs related to defending herself and her home, Ms. Hohenberg was forced to declare bankruptcy on August 2, 2018.

102.    The filing of the Evergreen Suit meant that Ms. Hohenberg was unable to bar third parties from entering the Hohenberg Property at any time, and third parties did, in fact, enter the Hohenberg Property without Ms. Hohenberg's permission or consent.

103.    In 2018, the Environmental Court ordered Ms. Hohenberg to sign a quit-claim deed for the Property, vacate the Hohenberg Property, and remove her personal possessions from the house. When she refused, the court issued a warrant for bodily attachment, requiring her to be arrested for contempt of court. It also ordered Ms. Hohenberg's possessions to be removed from the main house on the Property and placed in front of the house.

104.    By this time, Ms. Hohenberg was already destitute, and she could not pay someone to move her possessions. Moreover, because she was disabled, she could not move her possessions herself.

105.    As a result, many of Ms. Hohenberg's possessions and papers were lost, stolen, or damaged. Ms. Hohenberg experienced mental trauma by losing cherished family possessions and mementos. She also lost critical personal documents, including the few records she had of the Environmental Court proceedings.

106.    To avoid being imprisoned or forced to sign over her house, Ms. Hohenberg fled to Mississippi, where she continues to live. She has no other residence and now lives in a temporary hotel room.

107.    Ms. Hohenberg appealed the Environmental Court's contempt order but never

received a briefing schedule or other indication of when the Tennessee Court of Appeals would consider this appeal.

108.    The bankruptcy trustee auctioned the Property on April 25, 2019.

109.    With the Property sold in bankruptcy, in June 2019, the Environmental Court dismissed all warrants outstanding against Ms. Hohenberg and dismissed all the cases against her pending in the Environmental Court.

110.    Specifically, the Environmental Court issued an "Order Dismissing Cases and Recalling Warrants," on June 24, 2019. The order simply dismissed the case—it did not enter judgment for the plaintiff Evergreen Historic District Association or Ms. Hohenberg, and it did not make findings of fact or conclusions of law. Because she did not technically lose the case before the Environmental Court, Ms. Hohenberg did not, and could not, appeal the order.

111.    Ms. Hohenberg was subject to the proceedings of the Environmental Court for years, further deteriorating her already-fragile physical health and resulting in severe emotional and psychological trauma.

112.    Upon information and belief, the main house on the Hohenberg Property remains standing and uninhabitable—in fact, it appears to be deteriorating at a rapid pace. No one lives on the Hohenberg Property and it appears that no general upkeep occurs at the Hohenberg Property.

**D.    The Proceedings Involving Mr. Hanson**

113.    Mr. Hanson owned and had lived on the Hanson Property since 2001.

114.    In 2008, a neighbor complained to the city about the alleged condition of the Hanson Property.

115.    Memphis code inspectors then charged him with code violations for allegedly failing to remove personal property from his lawn. The city's prosecution occurred in the

Environmental Court.

116.    The Environmental Court found Mr. Hanson guilty and ordered him not to accumulate debris or store personal property outside.

117.    Seven years later, in 2015, the same neighbor again complained to Memphis authorities about the alleged height of grass on Mr. Hanson's property.

118.    The city of Memphis then brought a code enforcement action against Mr. Hanson for failing to comply with the 2008 court order and failing to cut his lawn. Again, the city brought the case in the Environmental Court.

119.    The citation issued by the city required Mr. Hanson to appear in the Environmental Court for a hearing on July 28, 2015.

120.    From July 28, 2015, to November 20, 2015, the Environmental Court continued the hearing multiple times. In at least two instances, the Environmental Court issued, and then recalled, bench warrants for Mr. Hanson's alleged failure to appear when he had, in fact, appeared when called.

121.    When the hearing did take place, the Environmental Court held that Mr. Hanson had failed to comply with the 2008 court order.

122.    As a punishment for this noncompliance, the District Attorney General moved the Environmental Court to hold Mr. Hanson in contempt.

123.    The Environmental Court granted the motion and, on December 15, 2015, sentenced Mr. Hanson to ten days in the Shelby County Jail.

124.    Armed police officers arrested Mr. Hanson and brought him to the jail, where Mr. Hanson was denied bond.

125.    On December 18, 2015, the Environmental Court reduced Mr. Hanson's sentence

to four days with credit for the four days he had already served.

126.    From December 2015 to August 2016, the Environmental Court required Mr. Hanson appear in court several times to monitor compliance with the 2008 court order. On at least two occasions, the Environmental Court issued bench warrants for his arrest for allegedly failing to appear as scheduled.

127.    In August 2016, a neighbor's tree weighing approximately four tons fell onto the Hanson Property, damaging its roof and littering the yard with debris.

128.    Mr. Hanson immediately repaired his roof, but the debris in his yard took significantly more time to clean and remove.

129.    Around this time, Mr. Hanson sold the Hanson Property to his brother. Mr. Hanson continued to live in the house on the property, however, after he sold it.

130.    From August 2016 to July 2019, at the behest of the same neighbor who had complained about his property in 2008, Memphis code inspectors continued to visit his home regarding the debris and the length of his grass.

131.    On July 25, 2019, Mr. Hanson returned home to find a notice posted on his door requiring him to appear before the Environmental Court because the persistence of debris in his yard made the home eligible for demolition.

132.    In August or September 2019, while Mr. Hanson attended a hearing at the Environmental Court, a Memphis code inspector entered Mr. Hanson's home through an unlocked door and documented the condition of the home's interior. At no point did Mr. Hanson give the inspector permission to enter his home and he prominently displayed a "No Trespassing" sign on the home.

133.    Mr. Hanson values his personal privacy and did not consent to the city entering—

let alone photographing—his most private spaces. Without consent or a search warrant, governmental inspectors viewed his private affairs, including his personal property and information about his health and financial condition.

134.    Based on these photographs, the Environmental Court deemed his home to be uninhabitable and issued a condemnation order.

135.    Upon information and belief, the Environmental Court did not hold a condemnation hearing and Mr. Hanson was not personally served with notice.

136.    In December 2019, while Mr. Hanson was out of town, the city of Memphis bulldozed the home on the Hanson Property, destroying all his possessions within it. These included his computers, furniture, personal papers and keepsakes, financial documents, and many of his court and health records.

137.    In December 2019, after the city destroyed Mr. Hanson's home, the Environmental Court dismissed the case against him.

138.    Mr. Hanson was subject to the proceedings of the Environmental Court for over a decade, resulting in severe emotional and psychological trauma.

139.    Mr. Hanson has been in ill health with limited mobility throughout the Environmental Court proceedings. His health issues were worsened by serving jail time.

140.    Over the course of these proceedings, the Environmental Court issued multiple bench warrants for Mr. Hanson's arrest and he spent at least twenty (20) days in the Shelby County Jail. These warrants made it difficult for Mr. Hanson to maintain gainful employment. He was humiliated and demoralized and experienced severe mental anguish.

141.    On at least one occasion, code enforcers employed by the city of Memphis entered Mr. Hanson's home without his presence and without his consent, violating his privacy and

security and causing him mental anguish.

142.    Mr. Hanson's home and his possessions were destroyed without notice, without an opportunity to be heard, and without an opportunity to appeal. He has no other residence and is currently homeless.

143.    At the hearings before the Environmental Court, even though the Tennessee Rules of Evidence fully apply to general sessions courts, the Environmental Court did not follow them.

144.    The Environmental Court heard hearsay testimony during the proceedings regarding Mr. Hanson.

145.    The Environmental Court heard witnesses who did not swear or attest to the truthfulness of their testimony in its proceedings regarding Mr. Hanson.

146.    The city did not lay the foundation for evidence to be admitted or considered in Mr. Hanson's case.

147.    The city did not authenticate the evidence in Mr. Hanson's case.

148.    Because it is a general sessions court, the Environmental Court's proceedings regarding Mr. Hanson were not recorded or transcribed, and the Environmental Court did not create an adequate (or, so far as Mr. Hanson is aware, any) record in the case.

149.    To the extent that Mr. Hanson could seek appellate review of the Environmental Court's decisions and orders, the process afforded appellants in cases arising from the Environmental Court is woefully deficient in its ability to correct legal and factual errors committed by the Environmental Court.

150.    This is because the Tennessee Court of Appeals is expected to consider appeals from the Environmental Court without having access to any evidence, testimony, transcripts, recordings, or even orders concerning what transpired in the Environmental Court.

151.    The combination of not being able to raise constitutional issues in the Environmental Court and the lack of a meaningful appellate review meant that the constitutional deficiencies in the Environmental Court's proceedings could not be raised before the Environmental Court and could not be effectively reviewed on appeal.

152.    Defendant Shelby County had a policy and practice of funding, and failing to oversee and restrict, the Environmental Court's violation of Mr. Hanson's due process rights by, among other things, failing to require the Environmental Court to follow the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure, or similar rules and procedures; failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; failing to require the Environmental Court to keep a record and transcript of its proceedings; and routinely losing, destroying, or otherwise making unavailable Environmental Court case files or jacket.

## V.    CAUSES OF ACTION

### I.    Violation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983

153.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 144 above.

154.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that, before a person may be deprived of his or her property, the property owner be provided notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

155.    Plaintiffs possessed a property interest protected by the Fourteenth Amendment to the U.S. Constitution, namely their respective homes, furniture, clothes, papers and records, and personal possessions.

156.    This interest is one of historical and continuing importance.

157.    Defendants interfered with this interest by, among other things, subjecting Plaintiffs to proceedings (i) that did not comport with the Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence; (ii) that were not transcribed or recorded; (iii) where evidence was not authenticated, admitted, or retained; (iv) that were not subject to meaningful review by appellate courts; and (v) that otherwise did not guard against the risk of erroneous deprivation.

158.    In so doing, Defendants deprived Plaintiffs of the process due to them under the Fourteenth Amendment to the U.S. Constitution.

159.    Defendants do not have a sufficiently important government interest to justify the violation of Plaintiffs' due process rights.

160.    The burden of providing sufficient process to Plaintiffs did not outweigh their interest in a fair, open, and accurate process.

161.    Any appellate review available to Plaintiffs was constitutionally deficient and cannot compensate for or cure the lack of meaningful pre-deprivation process in the Environmental Court.

162.    Defendants' behavior was shocking to the conscience and was so brutal and offensive as to not comport with traditional ideas of fair play and decency.

163.    Defendants' failure to provide sufficient process to Plaintiffs was conducted pursuant to a policy, practice, or custom that violates the Fourteenth Amendment to the U.S. Constitution.

164.    Defendants have colluded or coordinated to violate Plaintiffs' constitutional rights.

165.    Defendants have acted under color of state law in violating Plaintiffs' rights pursuant to the Fourteenth Amendment to the U.S. Constitution.

166.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered

irreparable injury to their constitutional rights.

**II.    Violation of Mr. Hanson's Fourth Amendment Right by Defendant city of Memphis**

167.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 158 above.

168.    The Fourth Amendment to the U.S. Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

169.    By entering and searching Mr. Hanson's home without consent and without a warrant and doing so pursuant to judicial proceedings that were constitutionally deficient, the city of Memphis conducted an unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution.

170.    The city of Memphis's search of Mr. Hanson's home was made pursuant to a policy, practice, or custom that violates the Fourth Amendment to the U.S. Constitution.

171.    The city of Memphis has acted under color of state law in violating Mr. Hanson's rights pursuant to the Fourth Amendment to the U.S. Constitution.

172.    As a direct and proximate result of the city of Memphis's actions, Mr. Hanson suffered irreparable injury to his constitutional rights.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A.    For a declaration that Defendants' systemic policies, practices, and customs violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

B.    For an award of damages to compensate Plaintiffs for the violation of their rights, destruction of their property, as well as any resulting harm to their physical and mental well-being,

in an amount to be determined at trial;

C.      For a declaration that the city of Memphis violated Mr. Hanson's Fourth Amendment rights when it entered and searched his home without a warrant and without consent and pursuant to a constitutionally defective judicial process;

D.      For an award of attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable statute or rule, or in equity; and

E.      For such other and further relief as this Court may deem just and proper.

Dated: July 6, 2020                    Respectfully Submitted,

APPERSON CRUMP, PLC                    INSTITUTE FOR JUSTICE

                                       /s/ William R. Maurer
Bruce S. Kramer                        William R. Maurer
Tenn. Bar No. 7472                     Wash. Bar No. 25451
6000 Poplar Avenue, Suite 150          600 University Street, Suite 1730
Memphis, Tennessee 38119               Seattle, Washington 98101
(901) 271-2710                         (206) 957-1300
bkramer@appersoncrump.com              wmaurer@ij.org

                                       Robert A. Peccola
                                       Fla. Bar No. 88772
                                       901 North Glebe Road, Suite 900
                                       Arlington, Virginia 22203
                                       (703) 682-9320
                                       rpeccola@ij.org

                        *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2020, a copy of the foregoing First Amended Civil Rights

Complaint was filed electronically with the Clerk of Court via the CM/ECF system.  Notice of this

filing will be sent to all counsel of record by operation of the court's electronic filing system. I

further certify that a copy of the foregoing will be mailed to:

City of Memphis, Tennessee                  Division 14 of the Shelby County, Tennessee,
Law Division                                General Sessions Court Criminal Division
125 N. Main St., Rm 336                      201 Poplar Ave., Rm 8-60
Memphis, Tennessee 38103                     Memphis, Tennessee 38103

                                            /s/ William R. Maurer
                                            William R. Maurer

                                            *Counsel for Plaintiffs*