**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| ) | |
| SARAH HOHENBERG AND JOSEPH ) | |
| HANSON, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) | No. 2:20-cv-02432-SHM-cgc |
| ) | |
| SHELBY COUNTY, TENNESSEE; ) | |
| DIVISION 14 OF THE SHELBY ) | |
| COUNTY, TENNESEE, GENERAL ) | |
| SESSIONS COURT, CRIMINAL ) | |
| DIVISION; AND CITY OF ) | |
| MEMPHIS, TENNESSEE, ) | |
| ) | |
|     Defendants. ) | |

**ORDER GRANTING CITY OF MEMPHIS, TENNESSEE'S MOTION TO DISMISS
AND GRANTING DIVISION 14 OF THE SHELBY COUNTY, TENNESEE,
GENERAL SESSIONS COURT, CRIMINAL DIVISION'S MOTION TO DISMISS**

Sarah Hohenberg and Joseph Hanson ("Plaintiffs") seek relief under 42 U.S.C. § 1983 for violations of their due process rights and of Hanson's Fourth Amendment rights. (See D.E. No. 16 ¶¶ 1, 169.) Before the Court are two motions. The first is Defendant City of Memphis, Tennessee's (the "City") motion to dismiss. (D.E. No. 26.) The second is Defendant Division 14 of the Shelby County, Tennessee, General Sessions Court, Criminal Division's (the "Environmental Court") motion to dismiss. (D.E. No. 28.) The motions are ripe for consideration. (See D.E. Nos. 30, 31, 33, 34.) For the following reasons, the City's motion to dismiss is

GRANTED, and the Environmental Court's motion to dismiss is GRANTED.

## I.   Background

Plaintiffs filed their Complaint on June 18, 2020. (D.E. No. 1.) They filed the Amended Complaint on July 6, 2020, (D.E. No. 16), alleging claims against the City and the Environmental Court. Plaintiffs allege that the City violated Hanson's Fourth Amendment rights when it entered and searched his home. Plaintiffs allege that the City and the Environmental Court violated Hohenberg's and Hanson's due process rights because of deficient procedures in the Environmental Court. For purposes of the motions to dismiss, the facts are taken from the Amended Complaint.

The Environmental Court was created by Defendant Shelby County, Tennessee, in 1991. (Id. ¶ 13.) The Environmental Court is vested with "the same jurisdiction and powers as are now exercised by the general sessions courts of the county" and has "exclusive jurisdiction to hear and decide cases involving alleged violations of county ordinances, including alleged violations of environmental ordinances." (Id. ¶¶ 21-22) (quoting Shelby County, Tennessee, Code of Ordinances, § 10-605). The Tennessee Rules of Civil Procedure do not apply and the Tennessee Rules of Evidence are not applied in the Environmental Court, and "its proceedings are not recorded or transcribed, and no record

is created." (Id. ¶¶ 56, 59, 60.) Unlike other general sessions courts, appeals from the Environmental Court are to the Tennessee Court of Appeals and are not heard de novo in the Tennessee Circuit Court. (Id. ¶ 61.)

The Environmental Court hears cases under Tennessee's Neighborhood Preservation Act (the "NPA"). Tenn. Code Ann. §§ 13-6-101, et seq. (D.E. No. 16 ¶ 35.) The NPA permits actions to enforce municipal code provisions governing abandoned or occupied properties. (D.E. No. 16 ¶¶ 36-38.) Those actions can be brought by property owners affected by blighted properties or by an "acceptable petitioner" as defined by the NPA. "Acceptable petitioner" includes the municipal corporation in which the subject property is located. (Id. ¶¶ 39-41.) The City frequently brings cases under the NPA in the Environmental Court. (Id. ¶ 27.)

The City hosts monthly meetings of an inter-agency team designed to create "more work" for the Environmental Court. (Id. ¶¶ 28-31.) That team is familiar with the workings of the court. (Id.) The City has "chose[n] to continue collaborating and funding ongoing code-enforcement operations designed to send property owners to the Environmental Court for litigation." (Id. ¶ 33.)

Between 2011 and 2018, Hohenberg's property was the subject of three Environmental Court actions. (Id. ¶¶ 70, 73, 85.) Two

were brought by private plaintiffs. (Id.) One was brought by the
State of Tennessee. (Id.)

Between 2008 and 2019, Hanson's property was the subject of
multiple actions in the Environmental Court. (Id. ¶¶ 115, 118,
126, 131.) Those actions were brought by the City. (Id.) During
the pendency of those actions, the City's code inspectors[1] entered
and viewed Hanson's property and took photographs of the
property. (Id. ¶¶ 132-33, 141.) After years of litigation in the
Environmental Court, Hanson's property was condemned by that
court and destroyed by the City. (Id. ¶¶ 134, 136.)

Plaintiffs allege a number of procedural deficiencies in the
proceedings against Hanson in the Environmental Court. They
include:

- Hearing hearsay testimony (id. ¶ 144);

- Hearing unsworn witnesses (id. ¶ 145);

- The City's failure to lay a foundation for evidence
  (id. ¶ 146);

- The City's failure to authenticate evidence (id. ¶
  147);

---

[1] The Amended Complaint is inconsistent about how many code inspectors
entered Hanson's property. Paragraph 132 alleges that "a Memphis code
inspector entered" Hanson's home. Paragraph 141 alleges that "code
enforcers . . . entered" Hanson's home.

4

- Lack of acceptable appeal procedures (id. ¶¶ 149-51); and

- No notice or opportunity to be heard before Hanson's home was destroyed (id. ¶ 142).

On August 10, 2020, the City moved to dismiss the Amended Complaint. (D.E. No. 26.) The City argues that Hanson's Fourth Amendment claim is barred by the Rooker-Feldman doctrine and that the Amended Complaint lacks sufficient allegations to state a due process claim against the City. (See id.)

On August 14, 2020, the Environmental Court moved to dismiss the Amended Complaint. (D.E. No. 28.) The Environmental Court argues that, as a court, it cannot be sued. (See id.)

## II.  Jurisdiction

### A.   Hanson's Fourth Amendment Claim

The Rooker-Feldman doctrine precludes a lower federal court from rendering a decision that amounts to appellate review of a state court judgment. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("The Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). The City argues that the Hanson's Fourth Amendment claim invites the Court to reject the Environmental Court's order approving the

entry into and search of his home. (D.E. No. 26-1 at 105; see D.E. No. 26-2 at 112-117.) If true, the Court lacks subject-matter jurisdiction over Hanson's Fourth Amendment claim.

When deciding whether a claim is barred by the Rooker-Feldman doctrine, the Court must look to the "source of the injury." McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006) (holding that after Exxon Mobil the proper "inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker–Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."); see also Kovacic v. Cuyahoga Cty. Dep't of Children and Family Servs., 606 F.3d 301, 309 (6th Cir. 2010) ("In McCormick, we explained that the pertinent inquiry after Exxon is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment").

Where the injury is the result of third-party action that is the "direct and immediate" product of the state court judgment, "claims of specific injuries . . . are actually challenges to the state-court . . . judgments and are barred by the Rooker-Feldman doctrine." Abbott v. Michigan, 474 F.3d 324, 329 (6th Cir. 2007)

(holding that claims of injury from conversion of pension benefits by third parties pursuant to state-court orders were attacks on the state-court orders themselves); McCormick, 451 F.3d at 394 ("[I]f a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself.").

Applying the source of the injury test, the result in this case is initially straightforward. The entry and search of Hanson's home were a direct and immediate product of the Environmental Court's order authorizing the entry and search. See Abbott, 474 F.3d at 329. Plaintiffs contend, however, that the Environmental Court's order was tainted because the City's prosecution of the case denied Hanson constitutionally-sound process. (D.E. No. 31 at 156.)

Plaintiffs argue that actions leading to a state court decision, such as the City's conduct in prosecuting the case against Hanson, cause an injury independent of the state court order and permit a claim that is not precluded by Rooker-Feldman. (Id. at 157.) There is arguable support in the Sixth Circuit for that proposition. Kovacic, 606 F.3d at 310 ("[T]he children's claims in this case do not seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus on the conduct of Family Services and of the social workers that led up to the juvenile court's decision to

7

award temporary custody to the County.") (emphasis in original);
McCormick, 451 F.3d at 392 ("Plaintiff asserts independent claims
that those state court judgments were procured by certain
Defendants through fraud, misrepresentation, or other improper
means") (emphasis in original).

Kovacic and McCormick are distinguishable, however, because
they did not address process claims, but claims objecting to
unconstitutional conduct unrelated to the process afforded the
plaintiffs during the state court proceedings. See Kovacic, 606
F.3d at 310 ("The conduct complained of primarily consists of
Family Services' alleged failure to undertake an independent
review of the situation before removing the children from the
home and triggering the Juvenile Court proceedings based on the
uncorroborated and unverified information from third parties
received in an ex-parte, informal meeting."); McCormick, 451 F.3
at 392 (noting "fraud, misrepresentation, or other improper
means").

Where the conduct leading to a state court order implicates
a denial of process, there is not an independent injury based on
that improper process. Raymond v. Moyer, 501 F.3d 548, 553-54
(6th Cir. 2007) (holding that, although bar membership was denied
without a hearing, opportunity to respond to alleged application
deficiencies, or a reason for denial, "the Supreme Court has made
clear that the Rooker-Feldman doctrine applies even when the

state court provides as little process as it did here"); see

Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 482

(1983) (quoting In re Summers, 325 U.S. 561, 567 (1945)) ("'[T]he

form of the proceeding is not significant. It is the nature and

effect which is controlling.'"); Reed v. Tennessee, No. 06-2756-

Ma/P, 2008 WL 1141586, at *6 (W.D. Tenn. Sept. 22, 2008) ("[T]he

Rooker-Feldman doctrine also bars claims that the state courts

used unfair procedures in reaching their decisions.").

Plaintiffs' attacks on the process afforded Hanson during

the Environmental Court proceedings do not create a source of

injury independent of the Environmental Court order. The entry

and search of Hanson's home were a direct and immediate product

of that order. Hanson's Fourth Amendment claim attacks the

Environmental Court order itself. That claim is barred by the

Rooker-Feldman doctrine. The City's motion to dismiss Hanson's

Fourth Amendment claim is GRANTED because the Court lacks

subject-matter jurisdiction over that claim. Hanson's Fourth

Amendment claim is DISMISSED.

### B.   Remaining Claims

The Court has federal question jurisdiction over Plaintiffs'

remaining § 1983 claims under 28 U.S.C. § 1331. Plaintiffs' §

1983 claims arise under the laws of the United States.

### III. Standard of Review

Rule 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir.

2020) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512
(6th Cir. 2001)). The court accepts as true all factual
allegations but does not accept legal conclusions or unwarranted
factual inferences as true. Theile v. Michigan, 891 F.3d 240, 243
(6th Cir. 2018). "The plaintiff must present a facially plausible
complaint asserting more than bare legal conclusions." Id.
(citing Twombly, 550 U.S. at 556; Iqbal, 556 U.S. at 677-678).

## IV.   Analysis

### A. The City's Motion to Dismiss Plaintiffs' Due Process Claim

Section 1983 reaches municipalities. Monell v. Dep't of
Social Servs. of New York, 436 U.S. 658, 690 (1978). "To set
forth a cognizable § 1983 claim against a municipality, a
plaintiff must allege that (1) agents of the municipality, while
acting under color of state law, (2) violated the plaintiff's
constitutional rights, and (3) that a municipal policy or policy
of inaction was the moving force behind the violation." Memphis,
Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of
Memphis, 361 F.3d 898, 902 (6th Cir. 2004).

Plaintiffs argue that, because the City chose to litigate
in the Environmental Court to enforce the NPA, the City is liable
for violations of due process based on the deficient procedures
in that court. (D.E. No. 31 at 162.) Allegations of discretionary
enforcement of a state statute such that citizens' constitutional
rights are violated can state a § 1983 claim against a

11

municipality. Garner v. Memphis Police Dep't, 8 F.3d 358, 364

(6th Cir. 1993) ("Defendants argue that they had no choice but

to follow [a state] statute. This argument is without merit. The

defendants were bound to follow the statute in that they could

not adopt a more permissive deadly force policy . . . . The

statute did not, however, prevent the defendants from adopting a

more restrictive deadly force policy."); Jordan v. Williams, No.

3:19-cv-00907, 2020 WL 4676477, at *9 (M.D. Tenn. Aug. 12, 2020)

("There are a handful of specific areas in which local law

enforcement in Tennessee has mandatory enforcement duties. . . .

Unless a specific mandatory enforcement duty is established by

statute, however, Tennessee's grants of enforcement powers to

local law enforcement are 'permissive' and do not 'impose a

mandatory duty to arrest every' violator. . . . While Metro had

some mandatory administrative duties under the Act, it has

identified no mandatory duty to enforce the Act against every

offender (or, indeed, against any particular offender). It

therefore appears that, if Metro wished not to enforce the Act

against individuals whose long-ago crimes occurred before the

registry's creation, it could do so." (citation omitted)); Bruce

& Tanya & Assocs., Inc. v. Bd. Of Supervisors of Fairfax Cty.,

Va., 355 F. Supp. 3d 386, 400 n.6 (E.D. Va. 2018) ("[T]he

prevailing view is that a local government's exposure to Monell

liability for enforcing state law turns on the degree of

12

discretion the local government retains and whether the locality

has made its own deliberate choices with respect to the law.");

see Vives v. City of New York, 524 F.3d 346, 353 (2d Cir. 2008)

("[I]f a municipality decides to enforce a statute that it is

authorized, but not required, to enforce, it may have created a

municipal policy. . . .").

    Plaintiffs fail to state a claim on this theory because they

do not allege that the City proceeded against them in the

Environmental Court based on the NPA. (See D.E. No. 34 at 179);

Vives, 524 F.3d at 353 ("While it is not required that a

municipality know that the statute it decides to enforce as a

matter of municipal policy is an unconstitutional statute, it is

necessary, at a minimum, that a municipal policymaker have

focused on the particular statute in question." (citation

omitted)).

    Plaintiffs do not allege that the City proceeded against

them under the NPA. Plaintiffs do not allege that the City

proceeded against Hohenberg in the Environmental Court at all.

(See D.E. No. 16 ¶¶ 70, 73, 85) (two private plaintiffs and the

State of Tennessee proceeded against Hohenberg in the

Environmental Court). Hohenberg has no cause of action against

the City under § 1983. The City did litigate against Hanson in

the Environmental Court to address "code violations," but

Plaintiffs do not allege in the Amended Complaint that the City proceeded based on the NPA. (See id. ¶¶ 115, 118-19, 131.)

The Amended Complaint does not allege that all proceedings by the City in the Environmental Court must be pursuant to the NPA. The Shelby County ordinance Plaintiffs cite that created the court does not limit its jurisdiction to environmental ordinances. See Shelby County, Tennessee, Code of Ordinances § 10-605 ("The fourteenth division shall have the same jurisdiction and powers as are now exercised by general sessions courts of the county, and shall also have the exclusive jurisdiction to hear and decide cases involving alleged violations of county ordinances, including alleged violations of environmental ordinances."). The allegations of the Amended Complaint state that "[i]n Memphis, the Environmental Court has the sole authority to adjudicate cases arising under the NPA." (D.E. No. 16 ¶ 54.) Although that allegation states that no other court in Memphis could hear an NPA case, it does not state that the Environmental Court could hear only NPA cases. (See id.) The Amended Complaint alleges that the NPA "permits private entities to sue property owners to enforce municipal code violations." (Id. ¶ 36.) That allegation does not state that there were no other means for the City to have pursued code enforcement in the Environmental Court against Hanson. Plaintiffs have not alleged that the City proceeded against Hanson under the NPA. (See id.)

14

The theory that a municipality can be liable for using its discretion to enforce a state statute in an unconstitutional way requires that the municipality enforce the state statute against the relevant plaintiffs, see Vives, 524 F.3d at 353, which is not alleged in the Amended Complaint.

Even assuming the truth of the allegations that the City was more than a mere litigant in the Environmental Court and aggressively pursued policies to increase its litigation in that court, (see D.E. No. 16 ¶ 26-34), there is no support in federal law for the proposition that a participant in a proceeding is liable for participating under procedural rules over which it has no control, see Askanazi v. Tiaa-Cref, No. 1:07-cv-199, 2008 WL 540839, at *5 (W.D. Mich. Feb. 25, 2008) ("In the context of the post-judgment collection proceedings, TIAA-CREF was a mere stakeholder and was bound to obey the orders of the court . . . . TIAA-CREF is not responsible for any procedural flaw or lack of due process that may have occurred during the post-judgment collection proceedings. Dr. Askanazi's remedy for any such shortcomings was to appeal to the Court of Appeals, not a lawsuit against TIAA-CREF."); cf. Kedrowski v. Richards, No. 20-cv-0193, 2020 WL 5253869, at *9 (D. Minn. Sept. 3, 2020).

In Kedrowski, defendants were not litigants, but administrators of a grant-based adjudicative system for victims of domestic violence and "worked with judges and others

15

sympathetic to [d]efendants' missions to select[ ], implement[ ], and administer [c]ourt policies and processes that delivered both favorable litigation outcomes for women alleging to be victims of domestic abuse and unfavorable litigation outcomes for men accused of domestic abuse." Kedrowski, 2020 WL 5253869, at *1 (internal quotations omitted). Beginning its analysis by "[a]ccepting that [d]efendants caused the Fourth Judicial District officers who adjudicated Kedrowski's marital-dissolution case to be biased against him," the court held that, because plaintiff had not alleged due process problems in the state court of appeals, no due process claim was stated. Id. at *9. Although they allege due process problems in appeals from the Environmental Court, Plaintiffs do not allege that the City caused the Environmental Court to be biased against them or that the City was responsible for any appellate deficiencies. See id. Absent allegations of bias in a judicial proceeding, the Amended Complaint does not state a due process claim that the City is liable for aggressively litigating in the Environmental Court.

Plaintiffs fail to state a due process claim against the City. Because Plaintiffs do not allege that the City enforced the NPA against them, the City cannot be liable for discretionary enforcement of the NPA. There is no support in federal law for any theory of liability based on the facts alleged. The City's motion to dismiss Plaintiffs' due process claim is GRANTED.

16

B.     The Environmental Court's Motion to Dismiss

The Environmental Court argues that it cannot be sued. (D.E. No. 28 at 122.) Whether the Environmental Court can be sued is a question of Tennessee law. Fed.R.Civ.P. 17(b)(3); Bush v. Godwin, No. 3:15-CV-524-TAV-CCS, 2018 WL 576850, at *6 (E.D. Tenn. Jan. 26, 2018) (quoting Fed.R.Civ.P. 17(b)(3)) ("Whether an entity is sui juris, i.e., has '[c]apacity to sue or be sued,' is determined 'by the law of the state where the court is located.'"). Although there appears to be no Tennessee case squarely deciding the issue, federal courts interpreting Tennessee law have concluded that courts in Tennessee cannot be sued. Godwin, 2018 WL 576850, at *6 (citing Wood v. Circuit Court of Warren Cty., Tenn., 331 F. Supp. 1245, 1245 (E.D. Tenn. 1971)) ("This Court has previously interpreted Tennessee law to hold that its state courts lack legal capacity to sue or be sued . . . .[T]he Probate Court . . . is not capable of being sued."); see Wood, 331 F. Supp. at 1245 (holding without referencing state law that "[a] 'court' is not a legal entity which may sue and be sued, but is an organ of the government authorized to administer justice.").

Plaintiffs argue that some Tennessee cases have permitted suits against entities like the Environmental Court. (D.E. No. 30 at 145.) The state cases cited do not establish that courts can be sued in Tennessee. Graham v. Gen. Sessions Court, 157 S.W.3d 790 (Tenn. Ct. App. 2004), was an action for declaratory

17

judgment invalidating a specific general sessions court order, not a suit to determine liability or money damages against the court. Lewis v. Metro. Gen. Sessions Court, 949 S.W.2d 696 (Tenn. Crim. App. 1985), was a habeas action in criminal court to determine the subject matter jurisdiction of the general sessions court, not a "suit" as the term is understood in civil proceedings. The liability of the general sessions court was not at issue. Oxford Inv., Inc. v. Mashburn, 729 S.W.2d 96 (Tenn. Ct. App. 1985), was a suit against the general sessions court clerk, not against the court. In none of those cases was a suit for damages maintained against a general sessions court. They do not establish that such a suit is permitted under Tennessee law. The Environmental Court cannot be sued.

Because the Environmental Court is not sui juris, its motion to dismiss is GRANTED.

## V.    Conclusion

For the foregoing reasons, the City's motion to dismiss is GRANTED, and the Environmental Court's motion to dismiss is GRANTED.

SO ORDERED this 31st day of March, 2021.


                                    /s/ Samuel H. Mays, Jr.
                                    SAMUEL H. MAYS, JR.
                                    UNITED STATES DISTRICT JUDGE