```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

|  |  |
|---|---|
| SARAH HOHENBERG AND JOSEPH HANSON, | ) ) ) ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) No. 2:20-cv-02432-SHM-cgc ) |
| SHELBY COUNTY, TENNESSEE; DIVISION 14 OF THE SHELBY COUNTY, TENNESSEE, GENERAL SESSIONS COURT, CRIMINAL DIVISION; AND CITY OF MEMPHIS, TENNESSEE, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING SHELBY COUNTY, TENNESSEE'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING CASE**

Sarah Hohenberg and Joseph Hanson ("Plaintiffs") seek relief under 42 U.S.C. § 1983 for alleged violations of their constitutional rights. (See ECF No. 16.) In their First Amended Complaint, Plaintiffs name Shelby County, Tennessee (the "County"), Division 14 of the Shelby County, Tennessee, General Sessions Court, Criminal Division (the "Environmental Court"), and the City of Memphis, Tennessee (the "City") as Defendants. (ECF No. 16.) The Court has dismissed the Environmental Court and the City. (ECF No. 35.) Before the Court is the County's Corrected

Motion for Judgment on the Pleadings (the "Motion"). (ECF No. 50.)[1] At the Court's request, the Parties filed a Joint Stipulation of Facts and Law. (ECF No. 90.) For the following reasons, the Motion is GRANTED, and the case is DISMISSED.

## I. Background

Plaintiffs were formerly defendants in proceedings before the Environmental Court. They allege that the proceedings violated their due process rights. Plaintiffs allege that the County created, funded, and failed to oversee the Environmental Court. (See ECF No. 16 at ¶ 18, 98, 157.) For purposes of the County's Motion, the Court takes the facts from Plaintiffs' First Amended Complaint. The Court takes notice only of the state statutes and state-court rules identified in the Parties' Joint Stipulation.

### A. The Environmental Court

In 1991, the Tennessee General Assembly authorized counties with populations over 600,000 to create an additional division of the county general sessions court. 1991 Tenn. Pub. Acts Ch. 426, §§ 2, 5. That additional division would have jurisdiction over cases alleging violations of county ordinances, including environmental ordinances. Id. § 2. The court could "issue injunctions," "order any defendant found guilty of violating any [environmental ordinance] to correct such violation," and "punish

---

[1] The County's uncorrected Motion for Judgment on the Pleadings is **DENIED as MOOT**. (See ECF No. 47.)

any person for contempt who . . . willfully fail[ed] to obey such an order." Id. § 3. The clerk of the county general sessions court would serve as the clerk for the additional division. Id. § 2.

Shelby County, Tennessee, established the Environmental Court and conferred jurisdiction and powers coterminous with the jurisdiction and powers authorized by the General Assembly. Shelby Cnty., Tenn. Ordinances §§ 10-605, 10-606(b), 10-607(a). The Environmental Court is a division of the General Sessions Court of Shelby County. Id. The County defrays the expenses of the Environmental Court. Id. § 10-605. Environmental Court judges and the Clerk of the Environmental Court are County officials. See Lyons v. Thompson, No. 1:05-CV-171, 2006 WL 463111, at *5 (E.D. Tenn. Feb. 24, 2006) (general sessions clerks); Tucker v. Tennessee, No. 05-1046-T/AN, 2005 WL 1922561, at *2 (W.D. Tenn. Aug. 2, 2005) (general sessions judges).

In 2004, the Tennessee General Assembly passed the Neighborhood Preservation Act ("NPA"). The NPA creates two civil causes of action: 1) an action for damages against an owner whose property fails to meet community standards; and 2) an action in rem against a parcel that is a public nuisance for the purpose of abating the nuisance. Tenn. Code. Ann. §§ 13-6-104(a), 13-6-106(a). Civil actions under the NPA may be brought in "circuit, chancery, and any court designated as an environmental court." Id. § 13-6-107. When environmental courts hear actions under the NPA,

3

they exercise concurrent jurisdiction with the circuit and chancery courts. See State ex rel. Gibbons v. Club Universe, No. W2004-02761-COA-R3-CV, 2005 WL 1750358 (Tenn. Ct. App. July 26, 2005).

The Tennessee Rules of Evidence apply to all actions before general sessions courts. Tenn. Code Ann. § 16-15-721. The Tennessee Rules of Civil Procedure apply to actions before general sessions courts exercising the civil jurisdiction of circuit or chancery courts. Tenn. R. Civ. Proc. 1. In February 2021, the Environmental Court adopted Rules Regulating Practice and Procedure of the Shelby County Environmental Court. The Rules state, "In cases where [the] Court shares concurrent jurisdiction with Circuit and Chancery Court, the Tennessee Rules of Civil Procedure shall . . . apply. The Tennessee Rules of Evidence shall be applicable in all cases." R. Reg. Prac. Proc. Shelby Cnty. Envtl. Ct. I.

General sessions courts are not courts of record and do not keep minutes. Christopher v. Spooner, 640 S.W.2d 833, 835 (Tenn. Ct. App. 1982); see also State ex rel. Isabell v. Parkhurst, 217 Tenn. 655, 659, 399 S.W.2d 781, 782 (1964) (minutes reflect the "acts and judicial proceedings" of courts of record). Appeals from general sessions courts are generally to the circuit courts, where cases are tried de novo. Tenn. Code Ann. §§ 16-15-729; 27-5-

4

108(c).[2] General sessions court clerks are required to "[r]etain, preserve and file away in order, and properly mark for easy reference all the papers in civil cases before them, unless returned or transmitted, in pursuance of law, to the circuit court upon appeal or otherwise . . . ." Tenn. Code Ann. § 16-15-303(a)(1). Where environmental courts exercise jurisdiction that is concurrent with the jurisdiction of the circuit courts, appeal is to the Tennessee Court of Appeals, which conducts only appellate review. Club Universe, 2005 WL 1750358, at *4.

**B.   Hohenberg Proceedings**

Hohenberg owned the houses and curtilage at 1905 Overton Park, Memphis, Tennessee (the "Hohenberg Property"), which were the subject of proceedings in the Environmental Court between 2011 and 2019. (ECF No. 16 ¶ 9.) In 2013, the Environmental Court declared the Hohenberg Property a public nuisance. (Id. ¶ 76.) The Environmental Court appointed Neighborhood Preservation, Inc. as receiver and empowered that organization to make repairs to the Hohenberg Property in exchange for a lien. (Id. ¶ 78.) Because Hohenberg could not pay for the repairs, the Environmental Court ordered an auction of the Property. (Id. ¶¶ 79-81.) Before the

---

[2] Although circuit court are courts of record, "being a court of record does not mean that [circuit] courts make and preserve a detailed record of all their proceedings, but rather indicates that these courts permanently preserve regular minutes of their orders, judgments, and other proceedings." Trusty v. Robinson, No. M200001590COAR3CV, 2001 WL 96043, at *2 (Tenn. Ct. App. Feb. 6, 2001).

5

auction, the Environmental Court ordered that Hohenberg's possessions be placed in front of the house and required that Hohenberg sign a quit-claim deed to the Property. (Id. ¶ 103.) Many of Hohenberg's possessions and papers were lost, stolen, or damaged. (Id. ¶ 105.) When Hohenberg refused to sign a quit-claim deed, the Environmental Court issued an arrest warrant for contempt of court. (Id.) Hohenberg appealed the auction order to the Tennessee Court of Appeals. (Id. ¶ 82.)

Neither the appeal nor the auction ultimately proceeded. However, in 2018, Hohenberg declared bankruptcy. (Id. ¶ 75.) The bankruptcy trustee successfully sold the Hohenberg Property. (Id. ¶ 101.) Because Hohenberg no longer owned the Property, the Environmental Court dismissed all cases pending against her. (Id. ¶ 109.) It did not enter a final judgment. (Id. ¶ 110.)

### C. Hanson Proceedings

Hanson lived in the house at 2331 Eveningview Drive, Memphis, Tennessee (the "Hanson Property"), which was the subject of proceedings in the Environmental Court between 2008 and 2019. (Id. ¶ 10.) In 2008, the City charged Hanson with code violations for failing to remove personal property from the lawn. (Id. ¶ 115.) The Environmental Court found Hanson guilty of code violations and ordered him not to accumulate debris or store personal property outside. (Id. ¶ 116.) In 2015, the City brought a second code enforcement action against Hanson for failing to comply with the

6

2008 order and for failing to cut his lawn. (Id. ¶ 117.) The Environmental Court found that Hanson had failed to comply with the 2008 order, held him in contempt, and sentenced him to ten days in the County jail. (Id. ¶¶ 121-23.)

In 2019, the Environmental Court deemed the Hanson Property uninhabitable and issued a condemnation order. (Id. ¶ 134.) Hanson asserts that the Environmental Court did not provide notice of the condemnation hearing and did not hold a condemnation hearing. (Id. ¶ 135.) The City bulldozed the Hanson Property, and the Environmental Court dismissed all cases pending against Hanson. (Id. ¶¶ 136-37.)

### D.  Plaintiffs' Claims and Prayer for Relief

In their Complaint, Plaintiffs allege that the County violated Plaintiffs' due process rights by:

> [F]ailing to require the Environmental Court to follow the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure, or similar rules and procedures; failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; failing to require the Environmental Court to keep a record and transcript of its proceedings; and routinely losing, destroying, or otherwise making unavailable Environmental Court case files or jackets.

(Id. ¶¶ 98, 152.)[3] The Prayer for Relief asks the Court:

---

[3] The Parties dispute whether the Tennessee Rules of Civil Procedure should have applied in the Environmental Court proceedings against the Plaintiffs. Regardless of whether the Tennessee Rules of Civil Procedure should have applied, Plaintiffs assert that the rules of procedure that were applied in their proceedings were constitutionally deficient. (ECF No. 61, PageID 386.)

7

> A. For a declaration that Defendants' systemic policies, practices, and customs violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;
>
> B. For an award of damages to compensate Plaintiffs for the violation of their rights, destruction of their property, as well as any resulting harm to their physical and mental well-being, in an amount to be determined at trial . . . .

(Id. at PageID 76.)

## II. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." The standard of review for a judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the defendant "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Campbell v. Nationstar Mortg., 611 F. App'x 288, 291 (6th Cir. 2015) (quotations omitted). The motion tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Kolley v. Adult Protective Servs., 725 F.3d 581, 587 (6th Cir. 2013).

When evaluating a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

**III. Analysis**

**A. Rooker-Feldman Doctrine**

The County argues that the Rooker-Feldman doctrine deprives this Court of jurisdiction to hear Plaintiffs' claims. "The Rooker-

Feldman doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." In re Cook, 551 F.3d 542, 548 (6th Cir. 2009); see also D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The Supreme Court has described Rooker-Feldman as a "narrow" doctrine that is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Rooker-Feldman does not apply to ministerial actions by court personnel. Van Hoven v. Buckles & Buckles, P.L.C., 947 F.3d 889, 893 (6th Cir. 2020). It does not bar "forward-looking," general challenges to the constitutionality of state statutes or state-court rules. See Fieger v. Ferry, 471 F.3d 637, 644-646 (6th Cir. 2006).

Courts determine whether Rooker-Feldman bars a claim by looking to the "source of the injury the plaintiff alleges in the federal complaint." McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006). If the source of the plaintiff's injury is the state-court decision itself, Rooker-Feldman applies. Id. "If there is some other source of injury, such as a third party's actions, then

10

the plaintiff asserts an independent claim." Lawrence v. Welch, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting McCormick, 451 F.3d at 394). "A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" Berry v. Schmitt, 688 F.3d 290, 299 (6th Cir. 2012) (alteration in original) (quoting Evans v. Cordray, 424 F. App'x 537, 539 (6th Cir. 2011)). The type of relief requested—whether retrospective or prospective—generally indicates whether a plaintiff challenges a state-court judgment or a state law. Hancock v. Miller, 852 F. App'x 914, 921 (6th Cir. 2021) (citing Berry, 688 F.3d at 299–300).

The first question is whether state-court judgments are at issue in this case. Plaintiffs argue that there are no judgments because the Environmental Court dismissed all cases against Plaintiffs after they had lost their homes and did not enter final judgments. The Sixth Circuit rejected a final-judgment requirement for the Rooker-Feldman doctrine in RLR Invs., LLC v. City of Pigeon Forge, Tennessee, 4 F.4th 380, 392 (6th Cir. 2021). The Court reasoned that, "[i]f lower federal courts can't review the final product of state-court litigation, why should a lower federal court entertain an interlocutory appeal . . . ? To hold otherwise would allow potential relitigation of every state-court order[.]" Id. at 386 (internal quotations and citations omitted). The Sixth Circuit concluded that the Supreme Court's statement in Exxon limiting the

11

application of the Rooker-Feldman doctrine to state-court "judgments" did not impose a final-judgment requirement because not all judgments are final. Id. at 392 (citing federal and state rules of civil procedure that use "judgment" to refer to non-final judgments). Instead, the language in Exxon confirms that Rooker-Feldman applies to state-court decisions on the merits and does not apply to legislative, ministerial, or administrative actions. Id. at 392-93.

State-court judgments are at issue in this case. The Environmental Court decided that the Hohenberg Property was a nuisance. (ECF No. 16 ¶ 76.) The Court entered orders addressing receivership, auction of the Hohenberg Property, quit-claim requirements, and arrests for contempt. (Id. ¶¶ 78, 80, 103.) The Court found that the Hanson Property violated municipal ordinances and was uninhabitable. (Id. ¶¶ 116, 134.) The Court entered multiple arrest warrants and ultimately condemned the Hanson Property. (Id. ¶¶ 122, 134.) Those determinations and orders required the Environmental Court to "investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist." Feldman, 460 U.S. at 479 (internal quotations omitted). They are judgments for purposes of the Rooker-Feldman doctrine.

Non-judgments are also at issue. Plaintiffs allege that state statutes, state-court rules, and state-court practices deprived

12

them of due process. To the extent Plaintiffs bring forward-looking challenges to those statutes, rules, and practices, their claims would not be barred. See Fieger, 471 F.3d at 644-646. Plaintiffs also allege that the County did not make Environmental Court case files available to Plaintiffs and their representatives. Rooker-Feldman does not apply to ministerial actions—i.e., situations in which court personnel have a nondiscretionary obligation to act. See VanderKodde v. Mary Jane M. Elliott, P.C., 951 F.3d 397, 402-403 (6th Cir. 2020) (finding that writs of garnishment were ministerial actions because the clerk of court had a nondiscretionary obligation to issue the writs if the requests appeared correct). The Clerk of the Environmental Court had a non-discretionary obligation to "retain, preserve, and file away" all papers in civil cases before the Environmental Court. See Tenn. Code Ann. § 16-15-303(a)(1). Claims related to unavailable case files would not be barred by the Rooker-Feldman doctrine. See Watson v. Lockette, 379 F. App'x 822, 826 (11th Cir. 2010) (finding that plaintiff's claims that clerk's office employees refused to accept appeal papers and withheld guide to appeals process were not barred by Rooker-Feldman).

The Rooker-Feldman doctrine only prevents the review of state-court judgments. See Exxon, 544 U.S. at 284. With the exception of claims arising from unavailable case files, addressed below, Plaintiffs have asked the Court to review state-court

13

judgments. In their Prayer for Relief, Plaintiffs ask for a declaration that the County "violated" their due process rights and seek damages for injuries that resulted from those violations. (ECF No. 16, PageID 76.) Plaintiffs request only retrospective relief. They do not seek declaratory or injunctive relief that would prevent future application of state statutes, state-court rules, or state-court practices. Cf. Berry, 688 F.3d at 299–300 (finding Rooker-Feldman did not bar claims because plaintiff requested declaratory and injunctive relief that would allow him to engage in future protected speech); Hood v. Keller, 341 F.3d 593, 598 (6th Cir. 2003) (finding Rooker-Feldman did not apply because plaintiff sought relief that would prevent defendants from "enforcing or attempting to enforce" state administrative code). Plaintiffs do not mount forward-looking challenges.

That Plaintiffs have asked the Court to review Environmental Court judgments is also evident from the face of the First Amended Complaint. Plaintiffs allege that, although the Tennessee Rules of Evidence apply in Environmental Court proceedings, the Environmental Court did not properly apply the Rules in proceedings against Plaintiffs. To find the County liable, this Court would first have to determine that the Environmental Court did not properly apply the Rules of Evidence. See RLR Invs., 4 F.4th at 388 (finding that the state-court judgment was the source of plaintiff's injury where plaintiff "would only prevail on its §

14

1983 claims or its constitutional claims if the state court were wrong"). The same is true of Plaintiffs' claims that the County did not require the Environmental Court to adopt constitutionally compliant rules and practices. To find the County liable, this Court would first have to determine that the rules and practices applied in the Plaintiffs' proceedings were constitutionally deficient. Such a determination would call into question the validity of the Environmental Court's previous orders. See Pieper v. Am. Arb. Ass'n, Inc., 336 F.3d 458, 461 (6th Cir. 2003) (applying Rooker-Feldman where it would be impossible grant plaintiff relief without calling into question the state court's decision).

By naming the County as a Defendant, Plaintiffs attempt to frame their injuries as the result of third-party actions. However, federal courts routinely apply the Rooker-Feldman doctrine to cases that challenge the constitutionality of statutes, rules, and practices as applied in previous state-court actions. See, e.g., Brent v. Wayne Cnty. Dep't of Hum. Servs., 901 F.3d 656, 674 (6th Cir. 2018) (finding that as-applied constitutional challenge to state-court judge's "rubber stamp" policy was barred by Rooker-Feldman because the policy was "inextricably intertwined" with ultimate order); Carter v. Burns, 524 F.3d 796, 799 (6th Cir. 2008) (finding that the Rooker-Feldman doctrine barred as-applied challenge to state collateral review statutes); Howard v.

15

Whitbeck, 382 F.3d 633, 641 (6th Cir. 2004) (finding that as-applied challenge to state in forma pauperis statute was barred by Rooker-Feldman). State-court judgments can be the source of a plaintiff's injury even where a challenged statute, rule, or practice was promulgated by a "third party" legislative body, rules committee, or individual judge.

Plaintiffs argue that the Rooker-Feldman doctrine does not apply to the present case because they do not seek to "overturn" a state court judgment, but challenge only the "process" of the Environmental Court proceedings. The Tenth Circuit addressed a similar circumstance in which plaintiff challenged the constitutionality of a municipal DUI ordinance that imposed higher minimum sentences than required under state law. Market v. City of Garden City, 723 F. App'x 571, 571-72 (10th Cir. 2017). Plaintiff sought damages and a declaration that her served sentences were unconstitutional, but did not challenge the validity of the underlying conviction. Id. at 574. The Tenth Circuit concluded that the relief plaintiff sought was, "in everything but name," an attempt to overturn or reverse her conviction and was barred by the Rooker-Feldman doctrine. Id. at 575. Here, Plaintiffs do not seek to overturn an Environmental Court order, but they do ask for damages and a declaration that their due process rights were violated. That relief represents a request for appellate review of state-court judgments that this Court cannot entertain.

16

Although the Court does not read Plaintiffs' First Amended Complaint to allege forward-looking constitutional challenges, such challenges would fail for lack of standing. To establish standing, a plaintiff must "demonstrate actual present harm or a significant possibility of future harm." Fieger, 471 F.3d at 643 (quoting Peoples Rights Org., Inc. v. City of Columbus, 152 F.3d 522, 527 (6th Cir. 1998). "[A]llegations of past injury alone are not sufficient to confer standing." Id.; see also Brent, 901 F.3d at 675 (finding plaintiff failed to allege likely future harm in his complaint and therefore lacked standing to bring facial challenge against judicial policy). All Environmental Court proceedings against Plaintiffs have been dismissed. Plaintiffs have not alleged that they own or occupy property that is or will likely be subject to proceedings in the Environmental Court. They have not demonstrated present harm or a significant possibility of future harm.

B.  **Failure to State a Claim**

The County cannot be held liable for the failure to preserve and maintain case files in Environmental Court proceedings. "[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotations and citations omitted). "A [governmental entity] is liable under § 1983 only if the challenged

17

conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). To establish a municipal policy or custom, a plaintiff must show: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [in] federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013).

In the context of § 1983 municipal liability, district courts in the Sixth Circuit have strictly interpreted pleading standards. Spainhoward v. White Cnty., 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019); Epperson v. City of Humboldt, 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015). Generalized allegations of municipal liability or a policy or custom are insufficient. Minick v. Metro. Gov't of Nashville, No. 3:12-cv-0524, 2014 WL 3817116, at *2 n.3 (M.D. Tenn. Aug. 4, 2014) (collecting cases).

Plaintiffs have failed to state a claim against the County for the unavailability of Environmental Court case files. They have not pled facts showing an illegal official policy or

18

legislative enactment. Instead, state law requires general sessions court clerks to maintain case files. See Tenn. Code Ann. § 16-15-303(a)(1). Plaintiffs have not pled facts showing that an official with final decision making authority ratified illegal actions or that the County had a custom of tolerance of or acquiescence in constitutional violations. Plaintiffs allege only that they have been unable to obtain their case files. (ECF No. 16 ¶¶ 94, 95, 152.) That allegation, by itself, is insufficient.

**IV.   Conclusion**

For the foregoing reasons, the County's Motion is GRANTED, and the case is DISMISSED.

SO ORDERED this 3d day of August, 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE